UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ROBERT J. TERHAAR, II,

         Defendant.

**DECISION AND ORDER**
10-CR-296S

## I. INTRODUCTION

Presently before this Court is a Motion for Compassionate Release by Defendant Robert J. Terhaar, II, which the government opposes.[1]  See 18 U.S.C. § 3582 (c)(1)(A). For the reasons discussed below, Terhaar's motion is denied.

## II. BACKGROUND

On December 23, 2010, Terhaar waived indictment and pleaded guilty to a 2-count information charging him with possession of child pornography in violation of 18 U.S.C. § 2252A (a)(5)(A).  See Docket Nos. 12-14.  Seven months later, on July 25, 2011, this Court sentenced Terhaar to consecutive terms of imprisonment of 120 months on Count 1 and 90 months on Count 2, for an aggregate sentence of 210 months' imprisonment. See Docket Nos. 32, 33.  It also imposed 10 years' supervised release on each count (concurrent), a $200 special assessment, and no fine, fees, or costs.  See id.  Terhaar is presently serving his sentence at Ashland FCI, with a release date of August 12, 2025.[2]

---

[1] Terhaar's motion also contains a request for appointment of counsel, which is now moot in light of this Court's denial of Terhaar's subsequent motion for the same relief.  See Motion for Compassionate Release, Docket No. 40, p. 6; Docket No. 49 (subsequent request for appointment of counsel); Docket No. 50 (denying subsequent request for appointment of counsel).

[2] See https://www.bop.gov/inmateloc/ (last visited March 18, 2022).

1

On November 1, 2021, Terhaar filed a pro se motion for compassionate release (sentence reduction) under 18 U.S.C. § 3582 (c)(1)(A)(i). See Docket Nos. 40, 51, 52. He argues that release is warranted because he (1) suffers from inadequately treated health conditions that make him particularly susceptible to serious illness from COVID-19, (2) resides in a facility that has been unable to control the spread of COVID-19, and (3) has served a considerable portion of his sentence. The government opposes the motion. See Docket No. 43.

### III. DISCUSSION

**A.    Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act of 2018,[3] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such

---

[3] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release. See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions. See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, 614-15 (S.D.N.Y. 2020) (same).

2

> a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is warranted after consideration of the applicable 18 U.S.C. § 3553 (a) factors and consistent with any applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 451 F. Supp. 3d 288, 291 (S.D.N.Y. 2020); United States v. Gileno, 448 F. Supp. 3d 183, 185 (D. Conn. 2020).

The statutory exhaustion requirement is not jurisdictional, but rather, is a claim-processing rule that may be waived or forfeited by the government. See United States v. Saladino, 7 F. 4th 120, 121-124 (2d Cir. 2021) (per curiam). If invoked, however, the exhaustion requirement must be enforced because it is a mandatory claim-processing rule. See id. at 125 (Menashi, J., concurring); see also United States v. Schultz, 454 F. Supp. 3d 217, 223-24 (W.D.N.Y. 2020). The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to ap peal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, [4] or (2) 30 days lapse from the date the warden

---

[4] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf. 28 C.F.R. § 571.61 (a). Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director. Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's

of the defendant's facility receives the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

Congress initially delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  See U.S.S.G. § 1B1.13, Application Notes.

But notably, the Second Circuit has held that U.S.S.G. § 1B1.13 is inapplicable to compassionate release motions brought directly by defendants, such as this one, and no longer constrains a district court's consideration of what qualifies as extraordinary and compelling reasons for purposes of such motions.  See United States v. Brooker, 976 F.3d 228, 234-37 (2d Cir. 2020) (holding that U.S.S.G. § 1B1.13 applies only to motions brought by the Bureau of Prisons).  The circuit court further held that "the First Step Act

---

general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.").  Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel. Id. § 542.15 (a).  A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." Id.; see also United States v. Jones, 17 CR 214 (CM), 2021 WL 4120622, at *1-2 (S.D.N.Y. Sept. 9, 2021).

As to the required consideration of the 18 U.S.C. § 3553 (a) factors, they include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553 (a). Included in this calculus is whether the defendant may pose a danger to the safety of any person or to the community if released (the need to protect the public from future crimes).

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction. See Gileno, 448 F. Supp. 3d at 186.

**B.     Terhaar's Motion for Compassionate Release**

**1. Exhaustion of Administrative Rights**

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement. To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf. See 18 U.S.C. § 3582

(c)(1)(A).

Here, the record reflects that Terhaar has exhausted his administrative rights, and the government does not contend otherwise. See Motion for Compassionate Release, pp. 7-8 (containing Terhaar's administrative exhaustion records); Government's Response, Docket No. 43, pp. 2-3 (conceding administrative exhaustion). This Court therefore finds that exhaustion is complete.

**2. Extraordinary and Compelling Reasons for Sentence Reduction**

Terhaar principally contends that the ongoing pandemic constitutes an extraordinary and compelling reason for a sentence reduction. He maintains that he suffers from inadequately treated health conditions that make him particularly susceptible to serious illness from COVID-19, and that Ashland FCI is unable to control the spread of the virus. None of these arguments are compelling.

First, while the risks associated with the pandemic have surely warranted release in many cases, they do not here. Notwithstanding his current medical conditions,[5] Terhaar has already contracted and recovered from COVID-19. See Motion for Compassionate Release, p. 5. This is significant since "the main point of releasing an individual is to decrease the person's chance of contracting COVID-19," see United States v. Rodriguez, No. 19-CR-64, 2020 WL 4581741, at *2 (D. Conn. Aug. 10, 2020), and because it demonstrates that COVID-19 does not pose a serious risk to Terhaar's health, see, e.g., United States v. Hawkins, 16-CR-189 (JMA), 2021 WL 40206, at *2

---

[5] Terhaar claims to suffer from COPD, asthma, high blood pressure, obesity, Type 2 diabetes, and a number of other ailments. See Motion for Compassionate Release, p. 5; Reply Memorandum, Docket No. 52, p. 1. The submitted medical records largely support these claimed diagnoses, and this Court assumes for the sake of this motion that Terhaar suffers from each of the ailments that he alleges. See Medical Records, Docket No. 51.

6

(E.D.N.Y. Jan. 5, 2021) (denying compassionate release to defendant who contracted a non-severe case of COVID-19); United States v. Lindsey, No. 13-CR-271-LTS, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (finding that "an inmate's having contracted COVID-19, standing alone, does not qualify as an 'extraordinary and compelling" circumstance warranting a reduction in sentence"); United States v. Hardy, No. 11-CR-629, 2020 WL 7711676, at *2 (S.D.N.Y. Dec. 29, 2020) (finding that since the defendant "has contracted and seemingly weathered the disease, a sentence reduction based on the risk of contracting it no longer makes sense"); United States v. Delorbe-Luna, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release."); United States v. Williams, No. 11-CR-172, 2020 WL 6826740, at *6 (D. Conn. Nov. 20, 2020) (collecting cases); United States v. Mateus, No. 14-CR-504, 2020 WL 5096062, at *4 (S.D.N.Y. Aug. 28, 2020) (finding that defendant who had contracted and recovered from COVID-19 did not demonstrate extraordinary and compelling reasons for release); United States v. Santiago, No. 92-CR-563 (BMC), 2020 WL 4926470, at *2 (E.D.N.Y. Aug. 21, 2020) ("I do not believe that a positive COVID-19 test, even in an individual with risk factors for severe complications or death, constitutes an extraordinary and compelling circumstance in and of itself."); United States v. Perez, No. 04 Cr. 937-1 (NRB), 2020 WL 4677586, at *1 (S.D.N.Y. Aug. 11, 2020) (finding that "contraction of a disease generally does not constitute an extraordinary and compelling basis for release . . . [t]he fact that defendant recovered from COVID-19 further supports this conclusion").

Second, Terhaar's generalized fear of a continuing danger posed by COVID-19 also does not constitute an extraordinary and compelling reason for compassionate

7

release.  See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Nwankwo, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) ("the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease"); United States v. Eberhart, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020).

Third, Terhaar presents no evidence supporting his bare claim that his medical conditions are being inadequately treated or that release is necessary to "better manage [his] diet and exercise."  See Motion for Compassionate Release, p. 5.

Finally, Terhaar fails to demonstrate that Ashland FCI is unable or unwilling to respond to the threat of COVID-19.  As of this writing, there are zero positive inmate cases and zero positive staff cases at Ashland, which is at Level 3 Operations, a response specifically designed to quell the spread of the virus.[6]  The Bureau of Prisons is thus responding to the threat of COVID-19, which again, poses reduced risk to Terhaar, who has already contracted and recovered from the virus.  In any event, as this Court and others have found, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason

---

[6] See https://www.bop.gov/coronavirus/ (last visited March 8, 2022).

for a sentence reduction under the statutory scheme. See United States v. Scott, 09-CR-341S, 2020 WL 5587122, at *5 (W.D.N.Y. Sept. 18, 2020) (denying compassionate release to defendant in high-risk category who made no showing of Bureau of Prisons failures); United States v. Stevens, 459 F. Supp. 3d 478, 486 (W.D.N.Y. 2020); see also Raia, 954 F.3d at 597 ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Gold, 459 F. Supp. 3d 1117, 1120 (N.D. Ill. 2020) (finding that COVID-19 does not "warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease"); United States v. Gagne, 451 F. Supp. 3d 230, 235 (D. Conn. 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree"); Gileno, 448 F. Supp. 3d at 188 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

Terhaar's final argument is that release is warranted because he has served a significant portion of his sentence—approximately 142 of 210 months. Service of a sentence alone, however, does not constitute an extraordinary and compelling reason for a sentence reduction. See United States v. Johnson, 18-CR-907-PAC-2, 2021 WL 4120536, at *3 (S.D.N.Y. Sept. 9, 2021) ("The fact that Johnson has served most of his sentence and is scheduled to be released in less than three months is not an

9

extraordinary and compelling reason for a sentence reduction in this case, either."); United States v. Aswat, 04 Cr. 356, 2021 WL 2018207, at *4 (S.D.N.Y. May 20, 2021) (finding service of approximately 90% of sentence not extraordinary and compelling). Here, Terhaar's service of less than 75% of his sentence is not a compelling reason for release.

Accordingly, for all of the reasons stated above, this Court finds that Terhaar has failed to demonstrate circumstances, viewed singly or in combination, that constitute an extraordinary and compelling reason for compassionate release.

### 3. Consideration of the § 3553 (a) Factors

Even if Terhaar had demonstrated extraordinary and compelling reasons for a sentence reduction (which he has not), this Court would find that those reasons are outweighed by consideration of the § 3553 (a) factors, and that Terhaar's original sentence would be severely undermined by a sentence reduction. See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 432 F. Supp. 3d at 426.

The nature and circumstances of Terhaar's offense conduct are egregious. He amassed more than 2 million images of child pornography, most depicting minor male victims ranging from infants to teenagers. See Presentence Report, Docket No. 37, ¶ 16. Hundreds of the images depicted young boys in bondage. See id. Terhaar collected these images and actively shared them, even complaining when others were downloading his images but not sharing their own. See id. ¶ 10.

Terhaar's personal history and characteristics are unremarkable. He was raised in an intact family with five other siblings free from unusual problems or abuse. See id. ¶

10

55. He described his upbringing as "wonderful," though the Presentence Report details that Terhaar was the victim of bullying and sexual abuse by a male neighbor. See id. ¶¶ 56, 64-65. He is single with no children. See id. ¶ 60.

In considering the purposes of sentencing, this Court reiterates its previous finding that an aggregate sentence of 210 months' imprisonment is fair, just, and reasonable, and further finds that the sentence would be severely undermined by a reduction to time served. Such a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant. See 18 U.S.C. § 3553 (a). Such a reduction would also result in unwarranted sentencing disparities. Id.

Finally, as to dangerousness, which is considered in conjunction with the need to protect the public from future crimes by the defendant, this Court finds that Terhaar would pose a danger to the community if released. Terhaar told investigating agents that he was born with an attraction to boys and viewed child pornography to control his urges. See id. ¶¶ 12, 14. He admitted to attending a fair for the purpose of surreptitiously photographing boys, and he posed as a 15-year-old boy himself to engage in sexually explicit conversations online. See id. ¶¶ 12, 13. Notably, Terhaar told law enforcement that he continued to have urges for boys, that he wanted treatment, and that he felt that law enforcement needed to monitor his movements.[7] See id. ¶ 14.

---

[7] Terhaar suggests that he is not a danger to the community because he has no history of violent crimes and is statistically unlikely to recidivate. Through citation to United States v. Craig, Terhaar maintains that a sex offender's likelihood of recidivating decreases with age, and that the public is protected by sex offender registration requirements. 703 F.3d 1001, 1004 (7th Cir. 2012) (per curiam) (Posner, J., concurring) (suggesting that "capacity and desire to engage in sexual activity diminish in old age" and that "when released, a sexual criminal is subject to registration and notification requirements that reduce access to potential victims").

But Judge Posner's concurrence in Craig relates to the cost-benefit analysis of imposing sentences that

Accordingly, this Court finds that consideration of the § 3553 (a) factors outweighs any extraordinary and compelling reasons for a sentence reduction.

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that a sentence reduction (compassionate release) under 18 U.S.C. § 3582 (c)(1)(A)(i) is not warranted. Terhaar's motion will therefore be denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Terhaar's Motion for Compassionate Release (Docket No. 40) is DENIED.

FURTHER, that the Clerk of Court is DIRECTED to SEAL Defendant's reply memorandum (Docket No. 52), which details his medical conditions and medications.

FURTHER, that the Clerk of Court is DIRECTED to send a copy of this decision to Terhaar at his correctional institution of record.

SO ORDERED.

Dated:     March 18, 2022
           Buffalo, New York

                                               s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge

---

result in "very elderly prisoners," not to weighing dangerousness for purposes of modifying a sentence. Craig, 703 F.3d at 1004 (generally discussing the pros and cons of imposing a 30-year versus 50-year sentence). Moreover, Terhaar is not elderly, nor does he maintain that he *actually* has reduced desires. Although he represents that he is 57 years old, see Motion for Compassionate Release, p. 40 ("I'm 57 years old as of today"), Terhaar is actually only 47, nowhere near the age category that Judge Posner contemplates in Craig. See PreSentence Investigation Report, p. 2 and ¶ 55 (listing Terhaar's date of birth as March 22, 1974). And even with sex offender reporting requirements, Terhaar remains a danger, particularly given his history of masquerading as a teenager online and seeking out opportunities to surreptitiously photograph boys. Consequently, this Court finds Terhaar's arguments and reliance on Craig unpersuasive. See United States v. Curry, 03-CR-167S (1), 2021 WL 5194685, at *4 (W.D.N.Y. Nov. 9, 2021) (finding "nothing remarkable about Curry's age or the general notion that an individual's risk of recidivism may decrease with age, and certainly nothing extraordinary and compelling warranting a sentence reduction").